```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON


TERRY GROVES
MICHAEL BARNHOUSE
DANIEL M. D'AMBROSIA

        Plaintiffs

v.                                  Civil Action No. 2:05-0960

UNITED STEEL WORKERS OF AMERICA
LOCAL UNION NO. 15293 and
GEORGIA-PACIFIC CORPORATION and
COLLINS HARDWOOD COMPANY, LLC

        Defendants
```

## MEMORANDUM OPINION AND ORDER

Pending is the joint motion of defendants, Collins Hardwood Company LLC ("Collins"), Georgia Pacific Corporation ("GPC"), and United Steel Workers of America, Local Union No. 15293 ("USWA"), for summary judgment, filed July 12, 2006.

I.

Plaintiffs Terry Groves, Michael Barnhouse, and Daniel M. D'Ambrosia are Nicholas County residents who all previously worked for GPC. (Compl. ¶ 1). USWA previously represented plaintiffs pursuant to a collective bargaining agreement ("CBA") with GPC. (Id.) Plaintiffs contend Collins is the "successor to

. . . [GPC] which purchased its operation and succeeded . . . [GPC] under the contract with the . . . [USWA]." (Id.) Plaintiffs offer no evidence to support this conclusion, however, despite having been allotted discovery to muster that factual support.

The breach of a governing CBA is critical inasmuch as the complaint alleges federal question jurisdiction pursuant to section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. The complaint's operative allegations are as follows:

> 4. On or about August 19, 2005, defendant . . .[GPC] sold its facility in Richwood, WV, to Collins Hardwood, which company assumed as a successor, the . . . [CBA] between . . . [GPC and USWA].
>
> 5. As a consequence of the . . . sale, plaintiffs were the only three (3) union employees who were discharged without cause, as sixty-three (63) other union employees were kept on and several others hired.
>
> 6. [USWA] . . . refused to arbitrate the discharge of the plaintiffs leaving them no remedy but to come to this Court, and in so doing breached their duty of fair representation.
>
> 7. The defendant companies violated the . . . [CBA] . . . in terminating the plaintiffs without cause leaving them without jobs and forcing them to resort to court.

(Id. ¶¶ 4-8). Plaintiffs seek lost wages and benefits, past and future attorney fees and costs, and punitive damages. (Id.,

prayer for relief).  Plaintiffs' five-page response brief contains little in the way of factual development.  The discussion that follows is thus drawn mainly from the pending summary judgment motion insofar as the particulars are not challenged by plaintiffs.

On August 1, 2005, Collins entered into an Asset Sale Agreement ("Agreement") with GPC involving GPC's hardwood lumber sawmill ("sawmill") in Nicholas County.  (Disp. Mot. ¶¶ 1, 9).  Eric L. Schooler, Collins' president and chief executive officer observes in his affidavit that section 4.16 of the Agreement required GPC to terminate every sawmill employee prior to the closing of the sale.  (Id. ¶ 9-10 (citing Schooler Aff. and Schooler Dep.).  The Agreement additionally required Collins to hire at least 25 former GPC employees of Collins' choosing.  (Id. ¶ 11).  Between August 17 to 19, 2005, Collins interviewed 55 former GPC employees.  (Id. ¶ 12).  Collins hired all but four of these GPC employees.  (Id.)  Plaintiffs were three of the four former employees who were turned away.  (Id.)

On August 19, 2005, GPC paid each of its terminated employees severance benefits through August 29, 2005. (Id. ¶ 13).  Subsequently, plaintiff Terry Groves called USWA official Tim Dean to advise that all but three employees had been hired by

3

Collins. (Id. ¶ 14). According to Dean, Groves believed Collins failed to rehire him due to an open workers' compensation claim. Dean learned from one or more of the local union officers that some former GPC employees with active workers' compensation claims had been hired by Collins. (Id.) After consulting with counsel, Dean concluded there was no basis for the terminated employees to challenge their terminations or Collins' failure to employ them anew. (Id.). Groves was informed of the decision at a union meeting a few day later. (Id.)

In September 2005, the USWA met with GPC to engage in "effects bargaining."[1] (Id. ¶ 15). Dean's stated goal of the session was to obtain the best severance agreement possible for the four former GPC employees who were not rehired by Collins. (Id.)

Inasmuch as Collins hired nearly all of GPC's terminated workforce, Collins recognized it had a legal duty under the NLRA to bargain with the USWA. (Jt. Mot. ¶ 17). On April 16, 2006, the parties reached an accord setting forth the terms and conditions for the sawmill's employees. (Id. ¶ 18).

---

[1] The term "effects bargaining" emanates from First National Maintenance Corp. V. NLRB, 452 U.S. 666 (1981). In that case, the Supreme Court determined that although an employer lacked an obligation to bargain about its decision to close a plant, it was charged with bargaining over the "effects" of the closing.

Dean testified that he never requested that either GPC or Collins hire the plaintiffs. (<u>Id.</u> ¶ 19). Dean testified he was unaware of any legal obligation that might require such a step by the employers. (<u>Id.</u>). The lack of a governing CBA, of course, influenced his conclusion that no grievance would assist the plaintiffs. (<u>Id.</u>).

Collins seeks dismissal based upon, <u>inter alia</u>, the lack of a successorship clause in the Agreement or a new CBA relating to the sawmill, thus depriving the court of jurisdiction under section 301. GPC contends it is entitled to dismissal inasmuch as, <u>inter alia</u>, GPC's sale of the sawmill was consistent with its CBA, likewise depriving the court of subject matter jurisdiction under section 301. Finally, USWA seeks dismissal on the ground, <u>inter alia</u>, that plaintiffs cannot identify a breach of a CBA or any "bad faith" or "arbitrary" action on the part of the USWA.

On May 10, 2006, the court entered a memorandum opinion denying defendants' prior dispositive motions and further providing as follows:

> [T]he parties may engage in discovery that is limited to issues similar to those contained in Collins['] . . . dismissed dispositive motion and any successorship issues, including the exchange of the disclosures required by Rule 26(a)(1) with respect to those issues.

5

<u>Groves v. United Steel Workers</u>, No. 2:05-0960, slip op. at 8 (S.D. W. Va. May 10, 2006).  The May 10 memorandum opinion observed additionally as follows:

> Reduced to its essence, this action appears to be a hybrid section 301 claim, alleging the employer defendants' breach of contract and the USWA's breach of its duty of fair representation.  As such, it will be incumbent upon plaintiffs to prove the following elements: (1) that the USWA breached its duty of fair representation, and (2) that GPC and Collins Hardwood violated an applicable CBA.  See <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 164-65 (1983).

(<u>Id.</u> at 3 n. 2).  Until June 30, 2006, the plaintiffs were permitted time to conduct expedited discovery.  Plaintiffs have not requested additional time for discovery or sought to amend their complaint.

II.

A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to

6

establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate

7

factual conclusions to be drawn are in dispute. <u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

B. Analysis

1. Collins and GPC

At the time of the plaintiffs' termination, Collins was not a signatory to a CBA and plaintiffs have abandoned their allegation that the CBA or the Agreement contained a successorship clause. The absence of these provisions is

8

dispositive of plaintiffs' claim against Collins:

> Our analysis begins, as always, with the plain language of the provision.  Section 301 authorizes "[s]uits <u>for violation of</u> contracts between an employer and a labor organization . . . " 29 U.S.C. § 185 (emphasis added).  Applying the most natural interpretation of this language, we find that a suit against a non-signatory of a contract cannot be considered a suit for a violation of the contract.  As the court below reasoned, "It is axiomatic that only a party to a contract can violate that contract.  A contract governs only the conduct of the parties who have agreed to its terms." 759 F. Supp. at 1208.  <u>Accord</u>, <u>Pratt-Farnsworth</u>, 690 F.2d at 500-502.  The Union's complaint does not at any point allege that Covenant itself violated the terms of a collective bargaining agreement to which it was a party.  As a result, we find that the Union's claim does not fall within the scope of section 301 of the LMRA.

<u>International Union v. Covenant Coal Corp.</u>, 977 F.2d 895, 897 (4th Cir. 1992); <u>see also</u> <u>Sine v. Local No. 992</u>, 730 F.2d 964, 966 (4th Cir. 1984)(no jurisdiction under Section 301 over Eastern Conference of Teamsters since it was not a party to the CBA).  These decisions are in keeping with that of the United States Supreme Court:

> We found there [in <u>NLRB v. Burns Int'l Security Servs.</u>, 406 U.S. 272 (1972)] that nothing in the federal labor laws 'requires that an employer . . . who purchases the assets of a business be obligated to hire all of the employees of the predecessor though it is possible that such an obligation might be assumed by the employer.' 406 U.S., at 280 n. 5.  <u>See also</u> <u>Golden State Bottling Co. v. NLRB</u>, 414 U.S., at 184 n. 6.  <u>Burns</u> emphasized that '(a) potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, . . . and nature of supervision.'

*Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 261 (1974).

Collins chose to hire the vast majority of GPC's workforce although it lacked any apparent legal obligation to do so. The Agreement appears to have covered only a sale of GPC's assets, not the further rehiring by Collins of each of GPC's former employees.

Regarding GPC, the sale of the sawmill does not appear to have violated the CBA. As noted, that section governs "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185. As defendants contend, plaintiffs do not dispute that the CBA between USWA and GPC reserved exclusively to GPC certain rights, including but not limited to the right to plan, direct, control, increase, decrease, or discontinue operations, or to move, close, sell, or liquidate it whole or in part. The provision appears consistent with governing law: "It is well established that a collective agreement cannot bind an employer to continue in business." *Wien Air Alaska v. Bachner*, 865 F.2d 1106, 1112 (9th Cir. 1989); *see also*, *Fraser v. Magic Chef-Food Giant Markets, Inc.*, 324 F.2d 853, 856 (6th Cir. 1963).

Plaintiffs have thus failed to demonstrate (1) that Collins is signatory to a governing CBA, or (2) that GPC breached the CBA that governed its relationship with USWA. The court, accordingly, concludes that both Collins and GPC are entitled to summary judgment.

### 2. USWA

Plaintiffs allege that the USWA breached its duty of fair representation by refusing to grieve their discharge. (Comp. ¶ 6). As noted, the CBA permitted the sale of the sawmill, without a concomitant obligation upon GPC to assure the future employment of its union workforce. USWA did obtain some benefits for plaintiffs, including certain severance concessions. (Dep. of Tim Dean at 66-68).

In Thompson v. Aluminum Co. of America, 276 F.3d 651 (4th Cir. 2002), our court of appeals considered a hybrid 301 action. The suit alleged the union's wrongful failure to grieve and arbitrate. To be "arbitrary," the court concluded that "a union's conduct towards its member must be so far outside a wide range of reasonableness that it is wholly irrational." Id. at 657 (citing Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65

(1995)). The court of appeals observed additionally as follows:

> An employee has no absolute right to insist that his grievance be taken to a certain level; a "union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large."

Id. at 658 (citing Griffin v. Int'l Union, 469 F.2d 181, 183 (4th Cir. 1972).

Viewing the facts in the light most favorable to the plaintiffs, Dean represented the interests of the membership as a whole and negotiated better severance and pension packages for the plaintiffs. Dean did not believe that Collins was under any legal obligation to hire the plaintiffs. There are no facts from which the court might infer that USWA, in declining to grieve and arbitrate, acted arbitrarily or in bad faith. Plaintiffs thus fail to demonstrate a breach by USWA of its duty of fair representation. USWA is thus entitled to judgment as a matter of law.

3. Claim Raised in Response to Joint Summary Judgment Motion

One other point warrants discussion. In response to the joint summary judgment motion, plaintiffs suggest for the first time in this action that one or more of the defendants are

12

liable to them based upon the common-law breach of an oral employment contract.[2] They contend that while still employed by GPC, Nancy Helseth, Collins' Vice President of Human Resources, assured them they would be rehired upon successful completion of controlled substance testing. Groves contends the promise was repeated to him during his interview with Collins.

Had the claim been pled, it would not survive summary judgment. The West Virginia Supreme Court of Appeals in an employment case has discussed the requirements of a valid contract:

> Concerning the establishment of a contract, this Court has held that "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syllabus Point 5, <u>Virginian Export Coal Co. v. Rowland Land Co.</u>, 100 W. Va. 559, 131 S.E. 253 (1926).

<u>Ways v. Imation Enters. Corp.</u>, 214 W. Va. 305, 313, 589 S.E.2d 36, 44 (2003).

Fundamentally, plaintiffs identify no consideration supporting Helseth's promise. Moreover, in an analogous

---

[2]Plaintiffs are nevertheless equivocal concerning the claim. (<u>See</u> Pls.' Resp. at 4 ("Helseth's commitments to plaintiffs both before and after their termination could well be interpreted as a contractual commitment under West Virginia law."); <u>id.</u> at 4 ("The 'promise' as alleged of Collins could well be interpreted as a contract which they bre[a]ched . . . .")).

situation involving an oral promise of continued employment in an at-will setting,[3] the supreme court of appeals has observed as follows:

> In regards to employment contracts, this Court has held that "[a]n oral promise which has as its effect the alteration of an 'at will' employment relationship must contain terms that are both ascertainable and definitive in nature to be enforceable."

Ways, 214 W. Va. at 313, 589 S.E.2d at 44 (emphasis supplied) (quoting syl. pt. 1, Sayres v. Bauman, 188 W. Va. 550, 551, 425 S.E.2d 226, 227 (1992)).  As a matter of law, Helseth's statements, made perhaps in a misguided attempt to mollify concerns of soon-to-be terminated employees, are cast in terms too general to approach the showing required by Bauman and its progeny.[4]

---

[3]The analogy is apparent.  In an at-will employment relationship, an existing employee may be terminated at any time.  As set forth in the text, in order to impose some supervening obligation upon the at-will employer based upon a parol promise of continued employment, the supreme court of appeals has insisted upon a heightened, definite showing by the employee.

As mere prospective employees, Collins was under no obligation to hire plaintiffs in the first place.  In order to impose a hiring obligation upon Collins based upon an oral statement by one of its agents, it thus seems sensible to apply the demanding Ways standard.  This is especially so in the context of a pre-employment promise, such as that made by Helseth here, which comes unadorned by any of the usual details of employment such as the wages and benefits payable.

[4]Inasmuch as the claim was insupportable from a legal standpoint, the USWA had no obligation to grieve the matter for the reasons stated in section B.2. supra.

III.

Based upon the foregoing, the court ORDERS that the joint motion for summary judgment be, and it hereby is, granted. The court additionally ORDERS that this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: October 14, 2010

John T. Copenhaver, Jr.
United States District Judge